UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**James M. Ryan,** *et al.*,

       **Plaintiffs,**

-v-                                                                  Case No.: 2:08-cv-0036
                                                                   Judge Smith
                                                                   Magistrate Judge King

**Ford Motor Credit Company,** *et al.*,

       **Defendants.**

## OPINION AND ORDER

Plaintiffs James and Carolyn Ryan and Ryan and Ryan Real Estate Co. initiated this action against Defendants Ford Motor Credit Company, Steve Barbato[1], Bob Boyd Lincoln Mercury, Inc., Automotive Recovery Service of Cincinnati, Inc., the Honorable John P. Bessey, and the Attorney General of the State of Ohio[2], asserting claims for trespass, breach of the peace, assault, conversion, and similar state law claims arising from the repossession of vehicles by Ford Credit. The only potential federal claim appears to be against Judge Bessey asserting that his order in the state court case violates the "4th, 5th and 14th Amendments of the U.S. Constitution and particularly the Civil Rights Act, Title 42, of the U.S. Code, Section 1983."

This matter is before the Court on Defendant Bob-Boyd Lincoln Mercury, Inc.'s Motion

---

[1] Plaintiffs named Steve Barbadios in the Complaint, but Defendants have corrected the spelling to Steve Barbato.

[2] On March 31, 2008, Defendant the Attorney General of the State of Ohio moved to dismiss Plaintiff's Amended Complaint. On April 21, 2008, Defendant voluntarily dismissed Defendant the Attorney General of the State of Ohio without prejudice (see Doc. 27). Therefore, Defendant's motion is now moot.

to Dismiss (Doc. 15), Defendant Ford Motor Credit Company and Steve Barbato's Motion to Dismiss (Doc. 16), and Defendant Judge John P. Bessey's Motion to Dismiss (Doc. 29). Memorandums in Opposition have been filed and this matter is now ripe for review. For the reasons that follow, the Court **GRANTS** Defendant Bob-Boyd Lincoln Mercury, Inc.'s Motion to Dismiss, **GRANTS** Defendant Ford Motor Credit Company and Steve Barbato's Motion to Dismiss, and **GRANTS** Defendant Judge John P. Bessey's Motion to Dismiss.

## I. BACKGROUND

Plaintiffs James and Carolyn Ryan and Ryan & Ryan Real Estate Co. (collectively "Plaintiffs") claims in this case stem from a Franklin County Court of Common Pleas case brought by Ford Motor Credit Co. ("FMCC") against Plaintiff James Ryan and Ryan & Ryan, Inc., case number 06-CVH05-6659. Judge Bessey, who is named as a Defendant in this case presided over the Franklin County case.

Plaintiffs have purchased, leased and financed vehicles from and with Bob Boyd for many years. FMCC of Mesa, Arizona, collected payments from Plaintiffs on Bob Boyd's behalf. The total value of those transactions exceeded $158,000. Plaintiffs admit that they were regularly late in making their payments.

In August 2005, FMCC initiated a lawsuit against James Ryan and Ryan & Ryan, Inc. in the Franklin County Municipal Court. The case was subsequently transferred to the Franklin County Court of Common Pleas. In the lawsuit, FMCC alleged that James Ryan and Ryan & Ryan, Inc. owed FMCC for damage sustained when a vehicle was returned at the end of its lease with excess mileage and damage.

On January 12, 2006, FMCC and their agent, tow truck driver Jay Miller of Automobile Recovery Services, Inc. traveled to the Ryan's residential property located at 3165 Dale Avenue, Columbus, Ohio to repossess a vehicle. Mr. Miller entered the Ryans' carport structure and began to hook up a towing vehicle to the 2004 Mercury Mountaineer Premier located in the carport. The Premier was titled to Ryan & Ryan Real Estate Co. James Ryan came out of his home and confronted the driver, demanded that the vehicle be unchained and that the driver leave his property immediately, asserting that he was trespassing. Mr. Ryan engaged in an argument with the driver and when the driver refused to leave, Mr. Ryan began unhooking the chains from the Premier. A fight then ensued between the tow truck driver and Mr. Ryan.

Mr. Ryan retreated to his residence to answer his phone and spoke to a woman who identified herself as being with FMCC, calling from South Carolina. She informed Mr. Ryan that she was in contact with the agent of FMCC and was aware of what was going on and was instructing the driver to tow the Premier off the Ryan property. Mr. Ryan requested that FMCC cease the action and told her that FMCC was trespassing on his property. She again told Mr. Ryan that they would not stop. The tow truck driver continued to remove the Premier from the Ryans' carport and towed it to the public street. Another one of the Ryans' vehicles was damaged in the process. Thomas J. Ryan then arrived at the Ryan residence and also confronted the driver and told him not to trespass on the Ryan property again.

On January 19, 2006, the same tow truck driver and another man returned to the Ryan residence and demanded that Carolyn Ryan open the door. That same day, the same individuals tried to enter the office of Mr. Ryan at 195 E. Main Street, Columbus, Ohio. On February 7, 2006 and February 8, 2006, FMCC and their tow truck drivers returned to the Ryan residence in

the middle of the night and removed a second vehicle titled to Carolyn Ryan. That same night, the tow truck drivers entered the residential property of Thomas J. Ryan and removed two vehicles.[3] These two vehicles were titled to Ryan & Ryan Real Estate Co. A fifth vehicle, the Mountaineer, was taken on February 7, 2006 from the downtown private property of James Ryan. This vehicle was titled to Ryan & Ryan Real Estate Co.

On February 9, 2006, Steve Barbato[4] called Mr. Ryan's attorney, Ira Sully, to discuss the taking of the vehicles. Barbato informed Attorney Sully that he ordered the removal of all the vehicles from the Ryan residences due to the fact that he was concerned that the Ryans were about to file bankruptcy. During a later phone call on February 10, 2006, Attorney Sully informed Barbato that the retail installment contracts for all the vehicles were not in default and requested that all the vehicles be returned immediately. The request was rejected. Attorney Sully made two additional requests of FMCC legal counsel in Louisville, Kentucky to return the vehicles, but again the requests were rejected.

On January 21, 2006, FMCC transferred title to the Premier to FMCC. On February 22, 2006, February 23, 2006, and February 14, 2006, FMCC transferred title to the other vehicles to FMCC. On August 14, 2006, FMCC, through counsel, informed counsel for Mr. Ryan that the vehicles that were repossessed were placed in storage, their sale was to be put on hold, that an Amended Complaint was to be filed in the Franklin County Common Pleas Court case, and a request of the Court was to be made to sell the collateral. Counsel for Mr. Ryan was also

---

[3] Thomas J. Ryan is not a party in this case, but is a party in the case before the Franklin County Court of Common Pleas.

[4] Mr. Barbato is a party in ths case, but is not a party in the case before the Franklin County Court of Common Pleas.

4

informed that the Premier had already been sold.

In September 2006, FMCC filed a Motion for an order granting it leave to sell four vehicles taken from the Ryans' possession. On October 13, 2006, James Ryan and Ryan & Ryan, Inc., filed a memorandum contra asserting that the proper parties (the owners of the vehicles) had not been served in the case and had not had an opportunity to defend themselves from FMCC's allegations. The Ryans asserted that Ryan & Ryan, Inc., is not connected in any way to any of the subject automobiles. Further, they argued that the Complaint did not relate to any of the Ryans' vehicles that FMCC wished to sell. Judge Bessey issued a decision and entry granting FMCC's Motion to sell the automobiles and they were sold pursuant to that order.

On September 19, 2006, a Motion to Amend to file Third Party Complaint and for an Order to Sell Collateral were filed in the Franklin County case. On November 15, 2006, the Franklin County Court granted the aforementioned. The Amended Complaint was served on James Ryan and Ryan and Ryan, Inc. on December 22, 2006, on Carolyn Ryan on December 23, 2006, on Automotive Recovery Services of Cincinnati, Inc. on December 27, 2006, and on Thomas Ryan on December 29, 2006. Carolyn Ryan answered the Amended Complaint on January 11, 2007 and asserted a counterclaim against Bob Boyd Lincoln Mercury Inc. and Empire Fire and Marine Insurance Co. and also asserted a cross-claim against Defendant Automotive Recovery of Cincinnati Inc. Thomas J. Ryan and James M. Ryan answered on January 18, 2007 and asserted the same counterclaims and cross-claims as Carolyn Ryan. Ryan & Ryan, Inc. answered the Amended Complaint on January 18, 2007. On January 23, 2007, FMCC filed a Motion to File a Second Amended Complaint. The Motion was granted on September 20, 2007. However, as of the date the parties' briefs were filed in this case, Ryan &

5

Ryan, Inc., James M. Ryan, Carolyn P. Ryan, Thomas J. Ryan, and Ryan and Ryan Real Estate Co. have not been served with the Second Amended Complaint.

While this litigation was ongoing in the common pleas court, Ryan & Ryan, Inc. and James M. Ryan filed a notice of appeal to the Tenth District Court of Appeals on December 11, 2006. The appeal was dismissed on October 23, 2007 for lack of a final appealable order.

Plaintiffs initiated this case on January 14, 2008 and amended the Complaint on February 26, 2008. As a result of being named as a Defendant in this case, Judge Bessey recused himself on April 8, 2008 from the Franklin County case and it was reassigned to Judge Lynch.

The Plaintiffs in this action alleged that FMCC and Automotive Recovery disregarded James Ryan's orders to stay off his property and they took, stole, or wrongfully converted the Ryans' vehicles, despite the fact the Court's Order granted permission to do so. The Ryans further allege that, because the sale of the automobiles was "sanctioned and endorsed" by Judge Bessey's decision, the Defendants' actions were made under color of law and in violation of the United States Constitution (Am. Compl. ¶ 81).

Plaintiffs seek judgment against Defendants jointly and severally in an amount in excess of $158,000. Plaintiffs also seek punitive damages, treble damages, attorney's fees, interest, costs and an immediate return of the automobiles. Plaintiffs further seek a declaration that Ohio Revised Code §1309.609 is unconstitutional as it violates due process and private property rights of all Ohio citizens. Finally, Plaintiffs request a declaration that Defendants violated Plaintiffs' constitutional rights, that the seizing of the vehicles violated the Ryans' rights, and that the Defendants taking of the subject vehicles was an act of conversion and theft.

## II. STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the amended complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods.*, 705 F.2d at 155. The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978). Rule 12 (b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356, at 296 (2d ed. 1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. *Id.*

Although the court must apply a liberal construction of the complaint in favor of the party opposing the motion to dismiss, a court will not accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations. *See Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955,

1964-65 (2007)[5]. A plaintiff's obligation to provide the "grounds" of their entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action. *See LULAC v. Bredesen*, 2007 U.S. App. LEXIS 20556 at *3-4 (6th Cir. 2007) (*citing Bell Atlantic Corp. v. Twombly*, 127 S. Ct. at 1964-65). The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief. *Id.*

### III. DISCUSSION

Defendant Bob-Boyd, Defendant FMCC, Defendant Steve Barbato, and Defendant Judge John Bessey have all moved to dismiss Plaintiffs' Complaint. Each of the Defendants raise a similar argument, that this Court does not have jurisdiction over Plaintiffs' claims pursuant to the *Rooker-Feldman* doctrine. As an alternative argument, Defendants argue that the Court should abstain from deciding this case pursuant to the *Younger* abstention doctrine and/or the *Colorado River Water Cons. Dist. v. U.S.*, 424 U.S. 800 (1976). The Court will therefore address each of these arguments in turn.

**A.** ***Rooker-Feldman* Doctrine**

Defendants argue that the state court case currently pending in the Franklin County Court of Common Pleas is almost identical to the case at bar. The only material difference is that

---

[5] In *Bell Atlantic Corp.*, the United States Supreme Court rejected the language previously used by the Court in *Conley v. Gibson*, providing that "[i]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957). *See Bell Atlantic Corp.*, 127 S.Ct. at 1969 (holding that the *Conley* "no set of facts" language "has earned its retirement" and "is best forgotten.").

Plaintiffs have sued Judge Bessey on the basis that his order granting FMCC leave to sell the repossessed vehicles violated the "4th, 5th and 14th Amendments of the U.S. Constitution and particularly the Civil Rights Act, Title 42, of the U.S. Code, Section 1983." (Am. Compl. 41). Defendants assert that Plaintiffs are essentially seeking appellate review of Judge Bessey's order. Accordingly, Defendants argue that Counts Ten, Eleven, Thirteen, Fourteen, Sixteen and Seventeen of Plaintiffs' Complaint should be dismissed.

The *Rooker-Feldman* doctrine is designed to safeguard "our dual system of government from federal judicial erosion." *Squirek v. Law Offices of Sessoms & Rogers, P.A.*, 2003 U.S. Dist. LEXIS 7760 (M.D. N.C. May 5, 2003). It protects the state judicial systems by recognizing that the "independence of state courts would surely be compromised if every adverse decision in state court merely rang the opening bell for federal litigation of the same issues." *Id.*, *quoting Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000). Therefore, if a Plaintiff cannot succeed on a federal claim without requiring a district court to re-examine issues already decided by a state court, the district court cannot exercise subject matter jurisdiction.

The *Rooker-Feldman* doctrine originates from two Supreme Court decisions, which were rendered 60 years apart. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In both cases, the plaintiffs challenged the validity of state court decisions by filing suit in federal district court. In *Rooker*, the plaintiff asked the district court to render the state court judgment against him "null and void." *See Rooker*, 263 U.S. at 414-15. In *Feldman*, the plaintiffs filed suit against the actual state court that had rejected the plaintiffs' applications to practice law. *Feldman*, 460 U.S. at 478-79. In both cases,

9

the Supreme Court dismissed the suits for lack of subject-matter jurisdiction, reasoning that pursuant to 28 U.S.C. § 1257, only the Supreme Court, and not the lower federal courts, enjoys appellate jurisdiction over state court decisions. *See Rooker*, 263 U.S. at 414-15; *Feldman*, 460 U.S. at 478-79. Significantly, the *Feldman* Court reasoned that the plaintiffs could challenge the state rules themselves in federal court on constitutional grounds; such a challenge would not be asking the district court to exercise appellate authority over a state court, but normal preclusion rules would still apply. *Id.* at 487-88; *see also Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432, 435-36 (6th Cir 2006) (discussing the Supreme Court's analysis in the *Rooker* and *Feldman* cases more extensively). The source of the plaintiffs' alleged injury, then, was dispositive in *Feldman* on the issue of jurisdiction, a distinction which the Supreme Court reiterated more than 20 years later in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005).

Whether the *Rooker-Feldman* doctrine applies involves a two-part inquiry. First, the Court considers whether the federal claim is "inextricably intertwined" with the claim asserted in the earlier state court action. A claim is "inextricably intertwined" if "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Hutcherson v. Lauderdale County, Tennessee*, 326 F.3d 747, 756 (6th Cir. 2003), *quoting Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998). Second, the Court considers "whether the federal claim is a 'general challenge to the constitutionality of the state law applied in the state action,' to which the *Rooker-Feldman* doctrine would not apply, or 'a specific grievance that the law was invalidly--even unconstitutionally--applied in the plaintiff's particular

10

case,' that would raise a *Rooker-Feldman* bar." *Id.*

In reviewing Plaintiff's Complaint, the Court finds that Plaintiff's federal claims are inextricably intertwined with claims still pending in the Franklin County Court of Common Pleas. Specifically, Count Ten asserts that Judge Bessey's Order was wrong and "violated the due process rights of Plaintiffs." (Am. Compl. ¶78). Count Sixteen alleges that transfers based on orders by Judge Bessey are void and have no force and effect, essentially asserting Judge Bessey authorized the wrongful transfer of the vehicles. In Counts Thirteen and Seventeen, Plaintiffs assert that the Uniform Commercial Code §9-609, as adopted in Ohio, is unconstitutional. Finally, Counts Eleven and Fourteen both assert that Plaintiffs were not in default, but were in applicable grace periods or extensions. Defendants assert that these claims are "inextricably intertwined" with the claims asserted by Plaintiffs in the state court proceeding. In fact, a prior order by Judge Bessey explicitly rejected the same arguments Plaintiffs are attempting to reassert here.

Plaintiffs argue that the *Rooker-Feldman* doctrine is inapplicable because Ryan & Ryan Real Estate Co. has not been served with the complaint in the Franklin County case and therefore is not a party to that case. Further, Plaintiffs argue that Carolyn Ryan was not a party to the Franklin County case at the time the action was taken to sell her vehicle. Plaintiffs argue that Ryan & Ryan Real Estate Co. and Carolyn Ryan were therefore not losers in the state court action and accordingly the *Rooker-Feldman* doctrine is not applicable. Finally, Plaintiffs argue that they have raised federal question claims that should be litigated in Federal Court.

The Court agrees that Plaintiff is attempting to directly challenge Judge Bessey's order

granting FMCC leave to sell the repossessed vehicles. If Plaintiffs in this case were not proper parties to the Franklin County case, but adversely affected by a decision from that case, the proper forum to address those allegations is in the Franklin County case, not by attempting to craft federal questions claims.

Therefore, the federal review sought by Plaintiffs is clearly barred by the *Rooker-Feldman* doctrine and Counts Ten, Eleven, Thirteen, Fourteen, Sixteen and Seventeen are dismissed.

**B.     Claims against Franklin County Judge John Bessey**

Defendant Judge John Bessey argues and this Court agrees that at all times relevant to the allegations in this case, he was the presiding judge over the Franklin County case and therefore he is immune from suit. Federal law has long held that judges are immune from claims for money damages in connection with "judicial acts" unless there is a "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). As a Franklin County Court of Common Pleas Judge, Judge Bessey had proper jurisdiction over the subject matter of the underlying civil case pursuant to Ohio Revised Code §2305.13, which provides: "The court of common pleas has original jurisdiction in all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts."

Plaintiffs allegations confuse personal jurisdiction with subject matter jurisdiction and assert that Judge Bessey acted without jurisdiction because he did not have personal jurisdiction over all of the proper parties at the time he made his ruling. However, the judicial immunity jurisdiction inquiry focuses only on jurisdiction over the subject matter, not the person or geography. *See Stump*, 435 U.S. at 356-57; *see also State ex rel. Fischer v. Burkhardt*, 66 Ohio

12

St.3d 189, 191 (1993).

Further, Judge Bessey's actions in presiding over the Franklin County case were judicial acts that are shielded by absolute judicial immunity. Plaintiffs' claims against Judge Bessey challenge a decision he made during those ongoing proceedings. Therefore, the Court finds that Judge Bessey was performing judicial acts. *See Cooper v. Parrish*, 203 F.3d 937, 945-46 (6th Cir. 2000); *see also Barnes v. Winchell*, 105 F.3d 111 (6th Cir. 1997).

Therefore, having found that the actions Judge Bessey took in the Franklin County case were within the court's subject matter jurisdiction and that the acts were all judicial in nature, Defendant Judge John Bessey is entitled to absolute judicial immunity and all Plaintiffs' claims against him are dismissed.

While theoretically Plaintiffs could seek declaratory relief against Judge Bessey, Article III of the United States Constitution mandates that such relief is only an option when a case or controversy exists. *See Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997). The Plaintiffs cannot satisfy this burden as they have failed to allege an actual case or controversy against Judge Bessey. The Plaintiffs essentially seek a declaration that Judge Bessey ruled improperly in the underlying case, however, as discussed above with respect to the *Rooker-Feldman* doctrine, seeking appellate review of a state court proceeding cannot form the basis for jurisdiction in this Court.

## C. *Younger* Abstention

Defendants argue that *Younger* abstention is appropriate in this case because Plaintiffs are litigating the same issues in the state court proceeding. Under the abstention doctrine announced in *Younger v. Harris*, 401 U.S. 37 (1971), when state proceedings are pending,

13

principles of federalism dictate that the constitutional claims should be raised and decided in state court without interference by the federal courts. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 17 (1987). Three requirements must be met for *Younger* abstention to be appropriate: (1) there must be an ongoing state judicial proceeding; (2) the proceeding must implicate important state interests; and (3) there must be an adequate opportunity in the state proceeding to raise constitutional challenges. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Tindall v. Wayne County Friend of the Court*, 269 F.3d 533, 538 (6th Cir 2001); *Kelm v. Hyatt*, 44 F.3d 415, 419 (6th Cir. 1995). When Plaintiffs filed their Complaint in this Court, all three of the above requirements were met: there is a Franklin County case pending involving the same parties as the case at bar and the same underlying facts; the state proceeding implicates important state interests; and Plaintiffs have had an adequate opportunity to raise any constitutional issues during the state proceedings.

### 1. *Ongoing state judicial proceeding*

Plaintiffs' Complaint in this case arises from the same facts that are currently being litigated in the Franklin County case. There is no question that the state-court proceeding is "judicial in nature" and it was pending before the Franklin County Court of Common Pleas when the Complaint was filed.

### 2. *Implicate important state interests*

The state court proceeding implicates important state interests because it deals primarily with state law claims. Plaintiffs argue that abstention should not apply here because the case should be "litigated in a national forum as it is in the public's interest to limit the potential for trespass and assault which 'self help" only promotes." (Pls' Memo. Contra at 13). However, the

14

Court does not find it a necessity that state law claims such as trespass and assault to be litigated in a federal court. Therefore, in the case at bar, the proper forum for these state law issues to be decided is in a state court.

### 3. *Adequate opportunity to raise any constitutional issues*

Plaintiffs could have raised any constitutional claims they had during the ongoing state court proceedings. In fact, the proceedings are still ongoing in the Franklin County Common Pleas Court and multiple motions to amend the pleadings have been filed. The Court therefore finds that there was sufficient opportunity to raise constitutional challenges for purposes of *Younger* abstention.

The Court finds that the three prongs of the *Younger* abstention doctrine are met and therefore refrains from exercising jurisdiction over this case.

### D. *Colorado River Water* Abstention

Even if the aforementioned *Rooker-Feldman* and *Younger* abstention doctrines were not applicable, Plaintiffs' Complaint should be dismissed pursuant to the *Colorado River Water* abstention doctrine. *See Colorado River Water Cons. Dist. v. U.S.*, 424 U.S. 800 (1976). Under that doctrine, a federal court may abstain from deciding a federal court action in deference to a pending state proceeding in certain extraordinary circumstances. *Colorado River Water*, 424 U.S. 800. *Colorado River* abstention is a doctrine of judicial economy which derives from principles of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817. Its purpose is "to avoid duplicative litigation." *Id.* The United States Supreme Court, in recognizing this doctrine, set forth a number of factors to consider when assessing whether to dismiss a duplicative action. These

factors include:

    (1)      whether federal or state law provides the basis for decision of the case;
    (2)      whether either court has assumed jurisdiction over any res or property;
    (3)      whether the federal forum is less convenient to the parties;
    (4)      avoidance of piecemeal litigation; and
    (5)      the order in which jurisdiction was obtained.

*See GMBB, Inc. v. Travelers Indemnity Co.*, 100 F. Supp. 2d 465 (E.D. Mich. 2000), *citing Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). Before addressing the five factors, however, the Sixth Circuit requires the district court to first determine whether a parallel state court action exists, "otherwise the district court would have nothing in favor of which to abstain." *Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 571 (6th Cir. 1994). The state court proceedings need not be identical, merely "substantially similar." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). There is also no requirement that the parties in the state court proceedings be identical to those in the federal case. *See Heitmanis v. Austin*, 899 F.2d 521, 528 (6th Cir. 1990). The case at bar is parallel to the Franklin County case. The parties in both cases are substantially similar and the claims in both cases arise from the same material facts.

Turning next to the consideration of the aforementioned factors, no single factor is determinative. The presence of only one or two factors may warrant federal abstention. The Sixth Circuit Court of Appeals has affirmed abstention based solely on a fear of inconsistent outcomes in the two cases, even where the state and federal forums were equally convenient. *See Romine*, 160 F.3d 337.

In this case, the factors support abstention. The Franklin County case was filed first. Since both cases involve almost all the same parties, facts, and legal issues, the potential for

inconsistent results is high. There is nothing precluding Plaintiffs in this case from asserting all claims asserted here in the Franklin County case and obtaining complete relief. With the dismissal of the claims against Defendant Judge Bessey, there are no federal claims that must be brought in this Court. Plaintiffs can assert any potential federal claims in the Franklin County case. Further, the parties would be greatly inconvenienced if compelled to litigate both cases in two different forums. The only apparent reasoning for Plaintiffs bringing this action in federal court is because they were not happy with Judge Bessey's ruling in the Franklin County case and that is not a sufficiently compelling interest in litigating in federal court. Therefore, the Court finds that abstention is proper under the *Colorado River Water* case and Plaintiffs' claims in this case are hereby dismissed.

**E.     Jurisdiction**

Based on the aforementioned, Plaintiffs have failed to maintain any federal claims against Defendants. In fact, Plaintiffs Complaint primarily consists of state law claims. However, Plaintiffs only assert federal question claims as the basis for this Court's jurisdiction.[6] Having dismissed the claims under which Plaintiffs asserted federal subject matter jurisdiction, the Court declines to exercise supplemental jurisdiction over any of Plaintiffs' remaining state law claims.

It is well settled that a District Court may decline to exercise supplemental jurisdiction

---

[6] While Plaintiffs do not allege diversity of citizenship as a basis for federal jurisdiction in their Complaint, they do mention it in their Memorandum in Oppositions to Defendants FMCC and Steve Barbato and Bob-Boyd Lincoln Mercury's Motions to Dismiss (*see* p. 13 and p. 12 respectively). Diversity jurisdiction requires that no party share citizenship with any opposing party. *See Strawbridge v. Curtiss*, 7 U.S. 267, 267-68 (1806); *Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 36 F.3d 540, 545 (6th Cir. 1994). Here, the Plaintiffs and most of the Defendants are citizens of Ohio. Accordingly, diversity of citizenship jurisdiction does not exist in this case.

over state-law claims once it has dismissed all claims over which it possessed original jurisdiction. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997). Indeed, the Sixth Circuit has recognized that if all federal claims are dismissed before trial, remaining state claims generally should be dismissed. *Id.*; *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir.1992). Therefore, pursuant to 28 U.S.C. §1367(c)(3) and (d), the Court will dismiss all of Plaintiffs' state law claims against Defendants, that have not been previously dismissed, without prejudice.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Bob-Boyd Lincoln Mercury, Inc.'s Motion to Dismiss (Doc. 15), Defendant Ford Motor Credit Company and Steve Barbato's Motion to Dismiss (Doc. 16), and Defendant Judge John P. Bessey's Motion to Dismiss (Doc. 29).

Further, after concluding that this Court does not have jurisdiction over Plaintiffs' claims, the Court cannot maintain jurisdiction over Defendants FMCC and Steve Barbato's counterclaims and cross-claims (Doc. 19). Accordingly, Defendants' counterclaims and cross-claim are dismissed.

The Clerk shall remove Documents 15, 16, and 29 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

    */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**